UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LATOYA WEAVER,**

    **Plaintiff,**

  **v.**                                                                                          Case No. 21-CV-541-SCD

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*,

    **Defendant.**

## DECISION AND ORDER

Plaintiff Latoya Weaver applied for social security disability insurance benefits (DIB) and supplemental security income (SSI) due to her seizure disorder, depression, and anxiety. Her claim was denied, and the denial was affirmed following a hearing before an Administrative Law Judge (ALJ) employed by the Social Security Administration (SSA).

Weaver now seeks judicial review of the ALJ's decision because she believes that the ALJ improperly failed to consider the supportability of key medical opinions that formed the basis for the ALJ's decision. Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error. I agree with Weaver and reverse and remand with instructions to further reconsider the supportability of the opinions of Dr. Befera-Zielinski and Dr. Reintjes.

## BACKGROUND

This opinion will focus on Weaver's mental limitations. The ALJ imposed certain physical restrictions in Weaver's RFC based on her seizure disorder. There was significant evidence in the record regarding the physical effects of Weaver's condition, but the only issue

here is whether the ALJ improperly discounted the opinion of the evaluating psychologist, Dr. Befera Zielinski, in considering her mental limitations. Accordingly, the focus of this opinion is whether the RFC properly accounted for Weaver's mental limitations.

Latoya Weaver was thirty-nine years old at the time of the hearing before the ALJ. R. 45.[1] At the time of the hearing, she lived in a house with her boyfriend and her four minor children. Weaver also has two adult children, one of whom lives next door to her, and the other visits frequently. R. 52. Two of her children receive SSI. R. 53.

Weaver completed school through the eleventh grade and did not receive a high school degree or GED. R. 45. Weaver had a Certified Nursing Assistant license. Id. She worked as a caregiver and a hair braider for several years, but she stopped her work braiding hair due to hand cramps and because she found a full-time job as a caregiver in a group home for dementia patients. *See* R. 45-50. This role involved some administrative tasks like cleaning and doing laundry, as well as assisting patients with tasks like eating and bathing. R. 46.

Prior to the hearing, Weaver completed a Neurological Consultive Exam (NCE) and a Mental Status Consultative Exam (MSCE) as part of her application for DIB and SSI. Dr. Reintjes conducted the NCE in February 2019. His report is just over two pages and documents his conclusions but contains very little information regarding the tests and methods he used to reach those conclusions. *See* R. 582-583. He noted that Weaver brought in some of the medications that she had been taking, many of which were expired, and that she incorrectly believed the prescriptions were all active. R. 582. Dr. Reintjes noted that Weaver reported drinking seven to ten shots of alcohol each day. R. 583. Testing showed that Weaver's vitals, motor functions, gait, station, and coordination were all normal. R. 583. Dr.

---

[1] The transcript is filed on the docket at ECF No. 19-1 to ECF No. 19-3.

Reintjes stated that Weaver "ha[d] a very difficult time with spelling and calculations," but he believed "this [was] likely due to educational components and not concentration or ability to focus attention." *Id*. Finally, he found her speech and memory were normal, and she could properly follow a command and copy a figure. *Id*. She was able to spell the word "world" forwards, but not backwards. *Id*. Dr. Reintjes did not include a description of Weaver's functional capacity, but he concluded that she was able to return to work. R. 584.

Dr. Befera-Zielinski conducted Weaver's MSCE the following month, March 2019. *See*. R. 591-596. Her report consists of a thorough six-page evaluation of Weaver's symptoms and documents significant impairment in cognitive functions like concentration and memory. Weaver reported to Befera-Zielinski that she had seizures once a month to every other month and that the seizures had worsened her anxiety and depression. R. 591. Weaver did not remember the name or location of the counselor that she saw for these conditions several years prior, nor did she remember how long she was on anxiety medication. *Id*. Weaver reported that she was not on medication for depression or anxiety, but the doctor noted that she had an active prescription for hydroxyzine pamoate. R. 592. In contrast to her report to Dr. Reintjes, Weaver denied alcohol use to Dr. Befera-Zielinski. *Id*. She reported having confusion with times, dates, and instructions. R. 593.

Dr. Befera-Zielinski found that Weaver had very poor remote memory based on recall testing with words and numbers. The doctor also noted that Weaver's concentration was poor and that she often went on tangents and had to be redirected. Weaver's responses were "somewhat nonsensical." R. 594. Weaver could not do serial 4s forward, she could not spell "world" backwards, and she had problems with a three-step command. *Id*. Dr. Befera-Zielinski concluded by saying that "[f]ormal mental status testing is consistent with reductions

3
Case 2:21-cv-00541-SCD   Filed 09/30/22   Page 3 of 15   Document 36

in memory, and her remote memory is very poor, recent memory below average, and immediate memory below average as well. She has also demonstrated concentration difficulties during the interview process." R. 595. Under the "Statement of Work Capacity" section—a section absent from the NCE—Dr. Befera-Zielinksi expressed that Weaver "would have profound limitations understanding, remembering, and applying information at this time, as well as concentrating, persisting, and maintaining pace." R. 596. She also opined that Weaver would have a marked limitation in adapting and managing herself and no limitation in interacting with others. *Id*. Dr. Befera-Zielinski characterized Weaver's prognosis for gainful employment as guarded to poor. *Id*.

State agency psychologists reviewed the medical record and formed their own opinions on Weaver's residual functional capacity. These doctors, Dr. Hoy-Watkins and Dr. Barthell, found that Weaver's anxiety and depression would impose moderate limitations on her ability to understand, remember and apply information, and on her ability to concentrate, persist and maintain pace. R. 124, 142. Dr. Hoy-Watkins found in addition that Weaver would "benefit from supportive supervision in the workplace, in order to stay on task, and in order to complete a normal workday without interruption or distraction." R. 142.

At the hearing, Weaver testified about her experience with seizures and how they impacted her work and home life. Weaver could not recall when she had her first seizure, but the ALJ checked the records and reminded her that she went to the emergency room for a seizure in February 2018. R. 57. Sometime later, Weaver experienced another seizure for which she did not go to the emergency room. R. 66-67. After that seizure, Weaver's boyfriend and her neighbor found her passed out on the bathroom floor. R. 58, 67. Weaver began taking anti-seizure medication but would still suffer from "stare seizures" during which she would

remain conscious and aware of her actions but could not control them. *Id*. Weaver also suffered a seizure while working at the group home in January 2019. R. 46, 69. She could not remember what time it happened; she remembered only that she had given her clients their snacks and medicine at 3:00 pm and that she regained consciousness at 9:30 pm. R. 69. She testified that she had not been able to give her clients their medications and dinner at 8:00 pm like she was supposed to because she was unconscious. *Id*. Weaver stopped working as a caregiver because she felt it was not safe for her clients. R. 46, 69. Instead, she began to work as a caregiver for her mother for a few hours a week while her mother recovered from lung cancer. R. 46, 51, 56. Weaver testified that even after she stopped working, she was still able to care for the house and grocery shop. R. 55. Due to her seizure disorder, Weaver could no longer drive. R. 56.

      The ALJ asked Weaver about her medication regimen. R. 59. He noted that her record reflected that she had difficulty taking her medication regularly in the past, but Weaver replied that those issues had been resolved. *Id*. In addition to her anti-seizure medication, Weaver also took Duloxetine for her bipolar depression. *Id*. The ALJ asked her if she was still taking the Lamisil and Cymbalta that a doctor prescribed her, and she expressed that she could not remember why she was taking those medications. R. 60.

      The ALJ also asked Weaver about her drinking habits. He noted that the record indicated that she was a heavy drinker and took ten shots of vodka per day. R. 61. Weaver stated that was no longer accurate; she still drank, but not as heavily. R. 61-62. Weaver stated that around the time of the hearing, she would have only one or two mixed drinks on a weekend day. R. 62.

A vocational expert (VE) also testified at the hearing. The VE testified that an individual with Weaver's age, education, and experience would not be able to perform any past relevant work if she had the RFC the ALJ ultimately assigned. R. 85. Nevertheless, according to the VE, the individual would be able to perform several jobs available in significant numbers in the national economy, including as a mail clerk, an office helper, and a marker. R. 85-86.

In applying the five-step disability evaluation framework,[2] the ALJ found at step one that Weaver had not engaged in substantial gainful activity since the date last insured (December 31, 2022). R. 20-21. At step two, he found that Weaver had two severe impairments—anxiety and depression—and found that her seizure disorder, degenerative disc disease, neuropathy, asthma, and history of leg fractures were non-severe. See R. 21-23. The ALJ primarily supported his finding that Weaver's seizure disorder was non-severe with Dr. Reintjes's notes from the February 2019 NCE. R. 22. The ALJ noted that Dr. Reintjes reported that Weaver regularly drank large amounts of alcohol and did not consistently take her anti-convulsant medication, both of which could exacerbate her condition. R. 22.

At step three, the ALJ found that the claimant did not have a combination of impairments the met or medically equaled the severity of the Listings. R. 23. He found that Weaver had moderate limitations in understanding, remembering, and applying information; concentrating, persisting, and maintaining pace (CPP); and adapting or managing herself. R. 24. He found that she had a mild limitation in interacting with others. *Id*. In assessing the scope and severity of Weaver's mental limitations, the ALJ primarily grappled with the inconsistency between the NCE and the MSCE. The ALJ said that the evidence indicated no

---

[2] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

more than a moderate limitation in understanding, remembering, and applying information because even though "the claimant demonstrated difficulties with attention, concentration, and memory" during the MSCE, she exhibited normal functioning at her other appointments and the NCE. *Id*. The ALJ offered the same explanation to support a moderate CPP finding. *Id*.

The ALJ found Weaver had the following mental limitations in her residual functional capacity (RFC): "[Weaver] is limited to unskilled work performing simple, routine, and repetitive tasks in a stable work setting, defined as occasional changes and occasional decision-making. She can do work that can be performed at a flexible pace and involves individually performed work tasks with end of day quotas." R. 25. The ALJ explained that he intended these limitations to cover Weaver's moderate paragraph B limitations. R. 28. He found that while Weaver's impairments could reasonably be expected to cause her reported symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not consistent with the evidence. *Id*.

The ALJ also considered the opinion evidence, especially from the MSCE and NCE. He found that the evidence did not suggest that Weaver's mental symptoms were disabling. The ALJ explained that Dr. Reintjes's normal findings, Weaver's continued work caring for her mother, and the lack of hospitalizations or other intensive mental health treatment all suggested that Weaver could manage her symptoms. R. 28-29. In weighing the opinions, the ALJ found that the NCE was only partially persuasive and the MSCE was not persuasive. The ALJ found Dr. Reintjes's opinion that Weaver's seizures were greatly exacerbated by her drinking and failure to take her medications persuasive because other care providers had counseled her to reduce her alcohol consumption and take her medications in light of her

7

Case 2:21-cv-00541-SCD   Filed 09/30/22   Page 7 of 15   Document 36

condition. R. 30. However, according to the ALJ, the opinion was "not wholly persuasive" because Dr. Reintjes did not assess Weaver's functional limitations or capacity. *Id*. The ALJ found that the MSCE findings, which reflected significant limitations in several functional areas, deserved little weight because they were "inconsistent with the medical evidence of record," including the largely normal findings during the NCE and at Weaver's other medical appointments. *Id*. The ALJ also discounted the MSCE findings that Weaver struggled with memory and attention by referring to Dr. Reintjes' opinion that the claimant's difficulties with spelling and calculation were likely due to educational deficiencies, noting that Weaver "was able to do all other tasks" during Dr. Reintjes' examination. R. 30-31.

The ALJ briefly considered the opinions of the state agency reviewing psychologists, Dr. Barthell and Dr. Hoy-Watkins. He generally agreed with their findings, but stated that the normal findings documented in the NCE and in appointments with treating doctors contradicted Dr. Hoy-Watkins' finding that the claimant needed supportive supervision. 29-30.

The ALJ then found at steps four and five that Weaver could not perform any past relevant work but could still perform a number of jobs available in significant numbers in the national economy. R. 31-32. As such, he found that Weaver was not disabled and denied her applications for disability benefits and SSI. R. 32.

The AC denied Weaver's request for review on February 23, 2021, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On April 27, 2021, Weaver filed this action seeking judicial review of the decision denying her claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. Her case

was assigned to Judge Pepper, who reassigned it to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF No. 6, 7. Weaver filed a brief in support of her disability claim, ECF No. 26; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 34; and Weaver filed a reply brief, ECF No. 35.

**APPLICABLE LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Id.* Here, Weaver seeks remand in conjunction with a decision reversing the Commissioner's decision.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence

9

and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Weaver argues that the ALJ erred in evaluating the opinions of Dr. Befera-Zielinski and Dr. Hoy-Watkins. Both doctors opined that Weaver had more serious limitations than the ALJ found. Dr. Befera-Zielinski stated that Weaver would have profound limitations in understanding, remembering and applying information and in concentrating, persisting, and maintaining pace. Dr. Befera-Zielinksi also said that Weaver would have marked limitations in adapting and managing herself. Dr. Hoy-Watkins' opinion mostly aligns with the ALJ's findings, but she also stated that Weaver would benefit from extra supervision at work. The ALJ rejected these opinions as inconsistent with the rest of the medical evidence, in particular, the NCE and Weaver's treating doctors' notes.

ALJs must evaluate the persuasive value of medical opinions under standards set by the SSA. *See* 20 C.F.R. §§ 404.1520c, 416.920c. ALJs must consider various factors, the most important of which are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability concerns how internally well-supported the opinion is; the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her opinion, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is the degree to which a medical opinion comports with other evidence in the record, i.e., the more sources that align with a medical opinion, the more persuasive that opinion is. C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). An ALJ must discuss *both* factors in evaluating the persuasive value of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Weaver argues that the ALJ failed to consider the supportability of the relevant medical opinions. In response, the Commissioner argues, "[w]hile the ALJ did not use the word 'supportability' in his analysis of Dr. Befera-Zielinski's opinion, the ALJ's discussion of Plaintiff's normal neurological examination and normal mental status findings during treatment visits nonetheless demonstrates that Dr. Befera-Zielinski's opinion was unsupported by the objective medical evidence." ECF No. 34 at 7. The Commissioner misstates the definition and standard of supportability and conflates it with consistency. As a result, the defendant did not actually make any arguments regarding the supportability of any medical opinion.

The ALJ erred in failing to discuss the supportability factor in Dr. Befera-Zielinski's opinion. The ALJ writes Dr. Befera-Zielinski's opinion off as "not persuasive because it is inconsistent with the medical evidence of record," including treatment notes from other doctors and Dr. Reintjes' findings. R. 30. In another place in the decision, the ALJ suggests that Dr. Befera-Zielinski's exam findings do not need to be considered in determining Weaver's RFC because they "differ from the other medical evidence of record." R. 28. The ALJ also found that Weaver had only moderate limitations in understanding, remembering, and applying information and in concentration, persistence, and pace because treatment records and the NCE do not suggest the degree of limitation in these areas that Dr. Befera-Zielinski found. R. 24. In each of these instances, the ALJ discredits the MSCE based solely on its inconsistency with other evidence; he does not mention supportability. The ALJ could have found the MSCE unpersuasive, but the law *requires* him to at least consider supportability as a factor affecting the persuasive value. The ALJ's failure to discuss the supportability of Dr. Befera-Zielinski's opinion is legal error. This is particularly true when it appears the opinion

was the product of a thorough mental health examination and interview. *Wing v. Kijakazi,* No. 321CV00091PPSMMG, 2022 WL 3273898, at *3 (N.D. Ind. Aug. 11, 2022) ("Here, it's apparent the record demonstrates that Dr. Smekjal's opinions were supported by his objective medical examinations of Wing. Dr. Smekjal personally examined Wing and sensibly concluded that Wing was limited in her abilities."); *Kaehr v. Saul,* No. 3:19-CV-1171-PPS, 2021 WL 321450, at *4 (N.D. Ind. Feb. 1, 2021) ("the record seems to show that Dr. Macellari's opinions were supported by his objective medical examinations of Kaehr as well as tests he administered to Kaehr.")

Similarly, although the ALJ explained that Dr. Hoy-Watkins' opinion was "somewhat persuasive as to the B criteria as [it] [was] consistent with the medical evidence of record," he did not properly address supportability. R. 29-30. He also stated that "there is no support for the portion of the opinion stating the claimant needs supportive supervision" because it was inconsistent with medical evidence from doctors' appointments and from the NCE. R. 30. In this way, the ALJ seems to have conflated supportability and consistency and erred by not discussing the supportability of Dr. Hoy-Watkins' opinion.

Additionally, the legal error committed here is not harmless. An error is harmless when the court is convinced that the ALJ would reach the same result on remand. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Where an ALJ evaluates the persuasive value of evidence based on incorrect standards, it is not clear that the ALJ would reach the same result on remand. After considering both factors, the ALJ could find the MSCE more persuasive and determine that Weaver requires a more restrictive RFC. A more restrictive RFC could then impact the ALJ's assessment of available jobs at step five, which would ultimately affect her disability status. *See Wing v. Kijakazi*, No. 321CV00091PPSMMG, 2022 WL 3273898, at

*3 (N.D. Ind. Aug. 11, 2022) (reversing when "the ALJ failed to discuss the supportability (or lack thereof) of [the consultative examiner's] opinion, as required by the regulations."); *Maynard v. Saul*, No. 20-CV-677-WMC, 2021 WL 3362554, at *4 (W.D. Wis. Aug. 3, 2021) (reversing where the ALJ "failed to consider adequately whether the opinions from [the consultative examiner] and the state agency doctor opinions were consistent with or supported by relevant medical evidence.") Because the ALJ did not apply the proper standards in evaluating the evidence, and I am not convinced the ALJ would reach the same result on remand, I find that the error was not harmless.

Furthermore, the ALJ should reconsider his evaluation of the consistency of the medical opinions. He primarily referenced Dr. Reintjes' opinion as the source with which Dr. Hoy-Watkins and Dr. Befera-Zielinski's opinions conflicted. However, the ALJ also improperly evaluated Dr. Reintjes' opinion. The ALJ briefly addressed the consistency of the NCE with other medical evidence, but he failed to discuss supportability in a meaningful way. The ALJ stated that Dr. Reintjes' opinion was "partially persuasive" because it was consistent with other medical records that suggested her heavy drinking and difficulty following a medication regimen contributed to her seizures. However, because it did not provide an assessment of the claimant's functional limitations or capacity, the ALJ said it was not wholly persuasive. R. 30. In other words, the opinion was *consistent* with other doctors noting that Weaver's drinking and failure to take her medication exacerbated her seizures, but there is no explanation for how or why it was *supported* by relevant evidence and explanation.

Despite finding that this opinion was not well-supported, the ALJ relies heavily on Dr. Reintjes' opinion. *See* R. 22 (finding Weaver's seizure disorder non-severe based on Dr. Reintjes' opinion that "some recurrence of the claimant's seizures" was related to her alcohol

use and problems taking medication); R. 24 (finding Weaver only had moderate limitations in understanding, remembering and applying information and in concentrating, persisting, and maintaining pace in part because "findings were largely normal at the [NCE]"); R. 28-29 (finding that Weaver's difficulties with memory, attention, span, and concentration were not as severe as alleged because even though Dr. Befera-Zielinski found severe deficiencies, Dr. Reintjes' examination was inconsistent with that opinion); R. 30 (finding that "there is no support" for Drs. Hoy-Watkins opinion that Weaver needs supportive supervision to stay on task and complete a normal workday because of the normal findings in the NCE); R. 30 (finding Dr. Befera-Zielinski's opinion "not persuasive as it is inconsistent with the medical evidence of record," including the NCE, particularly because "Dr. Reintjes stated that the claimant's difficulty with spelling and calculations are likely due to education, and not concentration or the ability to focus attention.") Regardless of the ALJ's statements that he found Dr. Reintjes' opinion only "partially persuasive" and "not wholly persuasive," he appears to have treated the opinion as *highly* persuasive.

In considering the supportability of Dr. Reintjes' opinion on remand, the ALJ should also pay close attention to internal inconsistencies in the opinion. For example, Dr. Reintjes' overall opinion is that Weaver does not have limitations that interfere with her ability to return to work, but his findings also reflect difficulty in spelling and calculation. R. 583. The doctor reconciles these findings by saying that Weaver's difficulties in these areas are due to educational deficiencies and not disability. *Id*. On remand, the ALJ should consider whether Dr. Reintjes had an adequate foundation for this opinion about Weaver's education, particularly because the ALJ used that opinion as a reason to dismiss findings not just within Dr. Reintjes' opinion, but also findings in Dr. Befera-Zielinski's opinion. *See* R. 30-31.

Because the ALJ failed to evaluate the persuasiveness of the medical opinions under the proper standards, I reverse. On remand, the ALJ must explain how supportability affects the persuasiveness of the opinions of Dr. Hoy-Watkins and Dr. Befera-Zielinski, and he must reconsider the supportability of Dr. Reintjes' opinion and how it affects the consistency factor in other opinions.

## CONCLUSION

For the foregoing reasons, I find that substantial evidence does not support the ALJ's interpretation of the relevant medical opinions. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** the matter to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision.

**SO ORDERED** this 30th day of September, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge